# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 14, 2025

Lyle W. Cayce
Clerk

————————

No. 23-40094

————————

JAMES ETHRIDGE,

*Plaintiff—Appellant,*

*versus*

SAMSUNG SDI COMPANY, LIMITED,

*Defendant—Appellee.*

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:21-CV-306

_____

Before KING, JONES, and OLDHAM, *Circuit Judges*.

ANDREW S. OLDHAM, *Circuit Judge*:

James Ethridge brought a personal injury lawsuit against Samsung SDI Company, which manufactured a battery that exploded in his pocket. The district court dismissed his complaint for lack of personal jurisdiction because the Fourteenth Amendment's conceptions of fair play and substantial justice did not allow the State of Texas to exercise personal jurisdiction over Samsung. We reverse.

# I

## A

Samsung SDI ("Samsung") is a South Korean corporation with its principal place of business in South Korea. It manufactures and sells batteries. Samsung does not have a physical presence in the United States. Rather, it uses various subsidiaries and distribution companies to serve customers in the United States.

The product at issue in this case is a Samsung "18650" lithium-ion battery.[1] With respect to 18650 lithium-ion batteries, Samsung has two kinds of contacts with the forum State of Texas.

The first kind of contact is direct and clear. Since January 2019, Samsung has shipped 18650 batteries to Black & Decker's Texas manufacturing facility to be incorporated into sealed power tool battery packs. For a number of years (at all times relevant to this litigation), Samsung has also shipped 18650 batteries to HP and Dell to be used as samples or for laptop repairs in their Texas service centers.

The second kind of contact is less direct and less clear. Samsung sells 18650 batteries to "sophisticated and qualified" businesses, which typically use them in battery packs. ROA.641. Some of these battery packs end up in products that are sold to Texas consumers. Samsung contends, however, that it has no control over what happens to its 18650 batteries after it sells them to its business customers in Texas.

## B

James Ethridge is a citizen of Texas. In October 2018, he bought a Samsung 18650 lithium-ion battery from a Wyoming-based seller on

---

[1] An "18650" battery is 18 mm wide and 65 mm tall.

Amazon. The battery was presumably shipped to Ethridge in Texas, although the record does not describe how the Wyoming seller obtained the battery or got it to Ethridge. Ethridge appears to have bought the battery for the purpose of powering an e-cigarette device. In November 2019, the Samsung 18650 battery exploded while it was in Ethridge's pocket in League City, Texas. Ethridge sustained "severe burns and other injuries." ROA.64.

In 2021, Ethridge brought a personal injury lawsuit in Texas state court. Ethridge initially sued four defendants: Samsung, Firehouse Vapors LLC (which sold Ethridge his e-cigarette), and two Amazon entities. In his first amended petition, Ethridge added Macromall LLC (the Wyoming battery seller) as a fifth defendant. After Ethridge dismissed his claims against Firehouse Vapors, the remaining defendants removed the lawsuit to federal court under 28 U.S.C. § 1332. Ethridge then dismissed Macromall, leaving Samsung and the two Amazon entities.

The remaining defendants pursued different paths to dismissal. The Amazon defendants moved for summary judgment, which the district court granted. And Samsung moved to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The district court granted Samsung's motion. *Ethridge v. Samsung SDI Co.*, 617 F. Supp. 3d 638, 653 (S.D. Tex. 2022).

Ethridge timely appealed. He voluntarily dismissed the appeal with respect to his claims against Amazon. Accordingly, we consider only whether the district court erred in granting Samsung's motion to dismiss for lack of personal jurisdiction.

## II

We review *de novo* the district court's grant of a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). If the district court ruled "on personal jurisdiction without conducting an evidentiary hearing, the plaintiff

bears the burden of establishing only a *prima facie* case of personal jurisdiction." *Ibid.* To determine if "the plaintiff has met this burden, the court can consider the assertions in the plaintiff's complaint, as well as the contents of the record at the time of the motion." *Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020) (quotations omitted). All "jurisdictional allegations must be accepted as true," *Sangha*, 882 F.3d at 101, and we "resolve factual conflicts in favor of the plaintiffs," *Libersat v. Sundance Energy, Inc.*, 978 F.3d 315, 318 (5th Cir. 2020). But we need not credit conclusory allegations, even if uncontroverted. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

In diversity cases like this one, a federal court "may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the [Fourteenth Amendment to the] United States Constitution." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013); *see also* Fed. R. Civ. P. 4(k)(1)(A). Because the Texas long-arm statute "extends to the limits of the United States Constitution," *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016), we need consider only the federal constitutional issue.

In *International Shoe Company v. Washington*, 326 U.S. 310 (1945), the Supreme Court held that Due Process requires a State's exercise of personal jurisdiction to accord with "traditional notions of fair play and substantial justice." *Id.* at 316 (quotation omitted). In fleshing out this amorphous standard, the Supreme Court has since recognized two forms of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017). Because Samsung is neither incorporated in Texas nor has its principal place of business there, there is no general jurisdiction over Samsung in Texas. *See Daimler AG v. Bauman*, 571 U.S. 117, 137–39 (2014).

Thus, we turn to specific personal jurisdiction. Specific personal jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). To establish specific personal jurisdiction, three conditions must be met: (1) the defendant purposefully availed itself of the privilege of conducting activities in the forum State, (2) the plaintiff's claim arises out of or relates to those purposeful contacts with the forum, and (3) the exercise of personal jurisdiction must be fair and reasonable. *Ibid*; *see also Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317–18 (5th Cir. 2021). These requirements ensure that when "a company exercises the privilege of conducting activities within a [S]tate—thus enjoying the benefits and protection of its laws—the State may hold the company to account for related misconduct." *Ford Motor Co.*, 592 U.S. at 360 (cleaned up).

The first and third conditions require little discussion here. First, to demonstrate purposeful availment, the plaintiff must show that the defendant "deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* at 359 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)) (cleaned up); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The defendant's actions must be voluntary and not "random, isolated, or fortuitous." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984). Samsung has purposefully availed itself of the privilege of doing business in Texas through its multi-year 18650 contracts with Black & Decker, HP, and Dell. Through those contacts, Samsung has deliberately reached out beyond its home in South Korea to exploit a market and enter contractual relationships centered in Texas. *See Ford*, 592 U.S. at 359 (citation omitted). Those contacts constitute purposeful availment of the Texas forum.

The third condition is equally straightforward. Texas has an interest in maintaining a forum for its citizens who are injured within the State.

Ethridge has an interest in litigating in his home State. And a large company like Samsung has the ability to litigate in the forum. *See World-Wide Volks-wagen Corp. v. Woodson*, 444 U.S. 286, 291–93 (1980); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–74 (1985). Thus, there is nothing unfair or unreasonable about Texas's exercise of personal jurisdiction.

## III

The crux of the case is the Supreme Court's second condition for exercising specific personal jurisdiction: whether Ethridge's claims "arise out of or relate to the defendant's contacts with the forum" State. *Bristol-Myers*, 582 U.S. at 262 (quoting *Daimler*, 571 U.S. at 127) (quotation omitted). We first (A) explain the Supreme Court's recent relatedness holding in *Ford*. Then we (B) explain why *Ford* supports a finding that Ethridge's personal injury suit is related to Samsung's contacts with Texas.

## A

In *Ford*, the Supreme Court reviewed appeals from state court cases in Montana and Minnesota. In the first case, Montana resident Markkaya Gullett died in an accident on a Montana highway while driving her 1996 Ford Explorer. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 395 Mont. 478, 482 (2019). Gullett's personal representative sued Ford in Montana state court. *See id.* at 483. Ford did not design, manufacture, or sell the relevant Explorer in Montana. Rather, Gullett's Explorer was designed in Michigan, built in Kentucky, and sold for the first time in Washington. *Id.* at 482. Only years later was the vehicle resold and registered in Montana—without any involvement by Ford. *Id.* at 482–83.

Ford did engage in substantial business in Montana, however. Ford advertised in Montana, had dozens of dealerships in Montana, and sold automobiles in Montana, including "specifically Ford Explorers—the kind of vehicle at issue" in the Gullett lawsuit. *Id.* at 488.

In the second case, Minnesota resident Adam Bandemer suffered severe injuries in an accident on a Minnesota road while riding in a friend's 1994 Ford Crown Victoria. *See Bandemer v. Ford Motor Co.*, 931 N.W.2d 744, 748 (Minn. 2019). Bandemer sued Ford in Minnesota state court. *See ibid.* Ford did not design, manufacture, or sell the relevant Crown Victoria in Minnesota. *Ibid.* Rather, the Crown Victoria in question was designed in Michigan, built in Ontario, and sold for the first time in North Dakota. *Id.* at 757–58 (Anderson, J., dissenting). Only years later did the fifth owner of the Crown Victoria (the father of Bandemer's friend) register it in Minnesota. *Id.* at 758 (Anderson, J., dissenting).

But again, Ford engaged in substantial business in Minnesota. Ford advertised in Minnesota, had dozens of dealerships in Minnesota, and sold automobiles in Minnesota, including "more than 2,000 1994 Crown Victoria cars," like the one that injured Bandemer. *Id.* at 748.

Ford moved to dismiss the two lawsuits "on basically identical grounds." *Ford*, 592 U.S. at 356. Conceding purposeful availment, the company argued that the vehicles were not designed, manufactured, or sold in the relevant forum States. "Only later resales and relocations by consumers had brought the vehicles to Montana and Minnesota. That meant, in Ford's view, that the courts of those States could not decide the suits." *Id.* at 357.

The Supreme Court unanimously rejected Ford's relatedness argument and held the Fourteenth Amendment posed no obstacle to the state courts' exercise of specific personal jurisdiction. The majority opinion is subject to different, fair-minded interpretations. *Cf. id.* at 373 (Alito, J., concurring in the judgment); *id.* at 375–378 (Gorsuch, J., concurring in the judgment). But as best we can tell, the Court appeared to adopt the following rule for relatedness: Where the defendant sold a non-insignificant volume of product in the forum State, an in-state plaintiff's suit involving the in-state

use of and in-state injury from the same product will satisfy the relatedness condition of specific personal jurisdiction. Call it the "same product plus in-state injury" test for relatedness.[2]

Three points support this reading of *Ford*.

First, the Court rejected *Ford*'s exclusively causal view of relatedness. Parsing the "arise out of or relate to" phrase from previous decisions, the majority opinion distinguished claims that "arise out of" from claims that "relate to" the defendant's in-forum conduct. *Id.* at 362 (majority opinion). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing."[3] *Ibid.*; *see also ibid.* ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do."). In support of its reading of precedent, the Court looked to dicta in *World-Wide Volkswagen* (and readopted in *Daimler*) that would permit personal jurisdiction in a fact pattern similar to that in *Ford*. *See id.* at 363–64.

Next, the Court emphasized the close connection between *Ford*'s in-state activities and the products that injured the plaintiffs. The Court thrice remarked that specific personal jurisdiction would attach when a company

---

[2] This test fits comfortably with our court's pre-*Ford* precedents. For example, we have long characterized Justice O'Connor's plurality in *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102 (1987), as adopting a "stream-of-commerce-plus" test. *See, e.g.*, *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 420 (5th Cir. 1993); *In re Chinese Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 585 (5th Cir. 2014).

[3] Both concurrences in *Ford* noted that the majority opinion parsed the relatedness phrase as if it was interpreting statutory text. *See Ford*, 141 S. Ct. at 373 (Alito, J., concurring in the judgment); *id.* at 376 (Gorsuch, J., concurring in the judgment). While we agree with our esteemed dissenting colleague's view that Supreme Court opinions are not statutes, *see also post* at 9 (JONES, J., dissenting), the majority's decision is binding on us. And we do not have the liberty to read it differently.

serves a market for a product in a State and that same product causes injury in the State.[4] *Id.* at 355, 363, 368. Beyond that, the Court repeatedly emphasized that Ford had advertised, sold, and serviced the two relevant car models in Montana and Minnesota for decades. *See id.* at 364–65; *see also id.* at 365 ("Ford urges Montanans and Minnesotans to buy its vehicles, *including (at all relevant times) Explorers and Crown Victorias.* Ford cars—*again including those two models*—are available for sale . . . ." (emphasis added)); *ibid.* ("Ford had systematically served a market in Montana and Minnesota *for the very vehicles that the plaintiffs allege malfunctioned and injured them* in those States." (emphasis added)); *id.* at 368–69 ("All that assistance to Ford's in-state business creates reciprocal obligations—*most relevant here, that the car models Ford so extensively markets in Montana and Minnesota* be safe for their citizens to use there." (emphasis added)); *cf. id.* at 365 ("Contrast a case, *which we do not address*, in which Ford marketed the models in only a different State or region." (emphasis added)).

Because it was fair for Montana and Minnesota to regulate the in-state sales of Explorers or Crown Victorias, it was permissible for those States to provide a forum for in-state injuries arising from out-of-state sales of the same models. *See id.* at 367–68; *see also id.* at 368 ("An automaker regularly marketing a vehicle in a State . . . has 'clear notice' that it will be subject to

---

[4] Samsung argues that *Ford* did not announce a new standard of the kind discussed above. But three of the eight justices explicitly noted that *Ford* changed the doctrine. *See Ford*, 592 U.S. at 373 (Alito, J., concurring in the judgment) (discussing a "new gloss" on the case law); *id.* at 376 (Gorsuch, J., concurring in the judgment, joined by Thomas, J.) (noting the Court's "pivot[]"). The majority opinion was more implicit. But through its direct embrace of dicta from previous cases, *see id.* at 363–64 (majority opinion) (discussing dicta from *World-Wide Volkswagen*, *Asahi*, and *Daimler*), and its "new gloss" on the phrase "related to," the majority opinion modified the doctrine in ways that bind us today. *Id.* at 373 (Alito, J., concurring in the judgment).

jurisdiction in the State's courts when the product malfunctions there (regardless where it was first sold.") (quoting *World-Wide Volkswagen*, 444 U.S. at 297)). And insofar as principles of "interstate federalism" affected the analysis, Montana and Minnesota had the greatest interest in litigation involving in-state parties, an in-state accident, and in-state injuries. *Id.* at 368 (quoting *World-Wide Volkswagen*, 444 U.S. at 293).

Finally, the Court laid down guardrails to ensure that relatedness does not mean that "anything goes." *Id.* at 362. It did so by underscoring the limitations that come from its 2017 decision in *Bristol-Myers*. *See id.* at 361–62. Beyond that, the Court seemed to emphasize this was not a case where Ford only made "isolated" or "sporadic" sales in Montana or Minnesota. *Id.* at 366 n.4; *see also Keeton*, 465 U.S. at 774. Rather, Ford sold a large volume of Explorers and Crown Victorias in the forum States. *See Ford*, 592 U.S. at 357.

## B

It is a perilous project to interpret a Supreme Court decision that *the Justices themselves* interpret differently. *See, e.g.*, *supra* n.4. And as Justice Alito observed, the *Ford* majority opinion says there are "real limits" to the "related to" requirement—"[b]ut without any indication what those limits might be, I doubt that the lower courts will find that observation terribly helpful." *Ford*, 592 U.S. at 374 (Alito, J., concurring in the judgment). With epistemic humility, our best effort to apply the *Ford* opinion requires rejecting Samsung's jurisdictional objection.

Samsung admits that it sells 18650 batteries directly to customers in Texas, including HP, Dell, and Black & Decker.[5] There is no reason to

_____

[5] Samsung suggests that its Black & Decker shipments should not be counted because they began after Ethridge bought his battery but before the battery exploded in his pocket. *See* Red Br. 14 n.2. We disagree. One of the relevant contacts in *Ford* was a 2016

believe that those 18650 batteries are different in any way from the 18650 battery that exploded in Ethridge's pocket. And, while it is not clear how many batteries were sold to Samsung's corporate customers, the record does not suggest that the sales are "isolated" or "sporadic." *See Sangha*, 882 F.3d at 101 (plaintiff must only make a *prima facie* case).

*Ford*'s discussion of *Bristol-Myers* reinforces our finding that jurisdiction is proper. In *Bristol-Meyers*, plaintiffs from across the country brought a class action lawsuit in California state court. *Bristol-Myers*, 582 U.S. at 258. The Supreme Court found the States' exercise of specific personal jurisdiction over Bristol-Myers as to the claims of non-resident plaintiffs violated the Constitution. *Ibid.* And as the *Ford* majority explained, its ruling directly followed from that case:

> We found jurisdiction improper in *Bristol-Myers* because the forum State, and the defendant's activities there, lacked any connection to the plaintiffs' claims. See 582 U.S. at 265 ("What is needed—and what is missing here—is a connection between the forum and the specific claims at issue"). The plaintiffs, the Court explained, were not residents of California. They had not been prescribed Plavix in California. They had not ingested Plavix in California. And they had not sustained their injuries in California. See *ibid.* (emphasizing these points). In short, the plaintiffs were engaged in forum-shopping—suing in California because it was thought plaintiff-friendly, even though their cases had no tie to the State. See *id.* at 266–67 (distinguishing the Plavix claims from the litigation in *Keeton* because they "involv[e] no in-state injury and no injury to residents of the forum

---

"Ford Experience Tour," which occurred *after* the car accident that prompted the Minnesota lawsuit. *See Bandemer*, 931 N.W.2d at 748; *Ford*, 141 S. Ct at 1023–24. That suggests the relevant contacts cannot be limited to those that predated the battery purchase. And in any event, the long-term agreements that Samsung has with HP and Dell entail sufficient shipments to trigger purposeful availment.

State"). That is not at all true of the cases before us. Yes, Ford
sold the specific products in other States, as Bristol-Myers
Squibb had. But here, the plaintiffs are residents of the forum
States. They used the allegedly defective products in the forum
States. And they suffered injuries when those products mal-
functioned in the forum States. In sum, each of the plaintiffs
brought suit in the most natural State—based on an "affiliation
between the forum and the underlying controversy, principally,
[an] activity or an occurrence that t[ook] place" there. *Bristol-
Myers*, 582 U.S. at 262, 264. So *Bristol-Myers* does not bar ju-
risdiction.

*Ford*, 592 U.S. at 369–370 (cleaned up). In short, the difference between *Ford*
and *Bristol-Myers* was the connection between the plaintiff's claims and the
forum State. Relatedness was proper in *Ford* where the plaintiffs were resi-
dents of Montana and Minnesota, used the products in Montana and Minne-
sota, and suffered injuries in Montana and Minnesota. *See ibid*. Whereas in
*Bristol-Myers*, none of those three factors connected the out-of-state plaintiffs
to California.

That doctrinal line suggests Texas can exercise personal jurisdiction
over Samsung. Ethridge is a Texas resident, he used his 18650 battery in
Texas,[6] and he suffered an injury in Texas. Accordingly, Ethridge's suit com-
plies with *Ford*'s same-model-plus-in-state-injury condition for relatedness.

## IV

Finally, we turn to Samsung's "different market" counterargument.
Samsung contends it sells 18650 batteries to Texas *companies* (like HP, Dell,
and Black & Decker)—not Texas *consumers* (like Ethridge). Therefore,

---

[6] In light of *Ford*, it should not matter that Ethridge bought his battery from a
reseller and not directly from Samsung. The Explorer in the Montana suit in *Ford* was not
sold directly to the plaintiff but was resold as a used car. *Ford*, 443 P.3d at 411.

Samsung argues, Ethridge's injuries are not "related to" the company's relevant in-Texas contacts.

We reject this "different markets" understanding of the Fourteenth Amendment and *Ford*. We first (A) explain why Samsung's contention conflicts with longstanding Fourteenth Amendment doctrine. Then we (B) explain that Samsung's "different markets" test is unworkable. We then (C) explain why we find Samsung's out-of-circuit authorities unpersuasive. Finally, we (D) respond to the dissent's discussion of recent Fifth Circuit precedent.

## A

We cannot reconcile Samsung's "different market" theory with *Ford* or personal-jurisdiction doctrine more generally.

Begin with *Ford*. In that case, the car company contended it would be unfair to make it liable in Montana for Explorers that it did not design, manufacture, or sell in Montana. On its telling, the company effectively allocated a dollar amount for liability that it might face in Montana courts based on its in-state activities. Letting customers who bought Explorers in other States sue in Montana would disrupt Ford's corporate strategy. The *Ford* Court rejected this contention. It reasoned that even if the total liability for suits in Montana was higher than Ford might have planned (*e.g.*, because more people brought out-of-state Explorers into Montana than left the State with in-state Explorers), that burden could "hardly be said to be undue." *Ford*, 592 U.S. at 368 (quoting *Int'l Shoe*, 326 U.S. at 319).

Samsung's "different market" argument is also inconsistent with the Supreme Court's whole-forum focus. Over and over, the Court has referred, not to "part of the forum" or "an aspect of the forum," but to "*the* forum." *See Bristol-Myers*, 582 U.S. at 262 ("[T]here must be 'an affiliation between *the forum* and the underlying controversy . . . .'" (emphasis added) (quoting

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality opinion) ("[P]ersonal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis. The question is whether a defendant has followed a course of conduct directed at *the society or economy* existing within the jurisdiction of a given sovereign . . . ." (emphasis added)). Samsung, by contrast, would divide the forum State into many smaller markets—not one, indivisible forum State. *Cf. LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 348 (Tex. 2023) (declining to endorse LG Chem's "proposed granulation of the forum—the State of Texas—into distinct market segments when evaluating personal jurisdiction"). We are aware of no basis for Samsung's contention in Supreme Court precedent.

## B

Next, we worry that Samsung's "different market" interpretation of *Ford* would be unworkable. True, specific personal jurisdiction is already not the clearest legal doctrine. *See Ford*, 592 U.S. at 376–78, 382–84 (Gorsuch, J., concurring in the judgment); *see also* James P. George, *Running on Empty: Ford v. Montana and the Folly of Minimum Contacts*, 30 Geo. Mason L. Rev. 1, 5 (2022) (describing specific personal jurisdiction as "an unworkable maze of a test whose precedents are a repetitive patchwork of contradictions"). But in applying this sometimes-fuzzy doctrine, far be it from us to make the doctrine fuzzy to the point of indeterminacy.

Samsung's "different market" argument would do just that. The company attempts to define one market as business purchases of the 18650 and another market as consumer purchases of the 18650. It is unclear whether that market definition would work in any area of law. *Cf. New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1038 (5th Cir. 2023) (rejecting an antitrust product market that

failed to account for reasonable substitutes). And we certainly cannot see how it would work for personal jurisdiction. Personal jurisdiction rules should be as clear and administrable as possible at the outset of a case. Rule 12(b)(1) inquiries cannot turn on whether a defendant sells to government purchasers but not private ones; large businesses but not small ones; businesses in one industry but not another; purchasers in one link of the supply chain but not another; businesses in Austin but not Dallas; and so on.

Moreover, what are we to do with our precedents? This court repeatedly issues purposeful availment decisions that turn on the number of products entering a forum State. *See, e.g.*, *Ainsworth*, 716 F.3d at 178–79 (comparing the one New Jersey sale in *Nicastro* to the 203 Mississippi sales in the instant case). These rules determine purposeful availment in later cases. *See, e.g.*, *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 291–93 (5th Cir. 2020) (discussing *Ainsworth*). The point of these decisions is to put everyone on notice that X sales into Mississippi constitutes purposeful availment of that forum, but Y sales does not. If Samsung were correct, however, we would have to re-slice the forum sales along a potentially infinite number of different markets. For example, if 203 forklift sales to the State of Mississippi was enough in *Ainsworth*, how many would be enough if we narrowed the relevant market to just the Mississippi state government forklift market? We would have to (a) figure out the size of the overall Mississippi forklift market, then (b) figure out the size of the Mississippi state government forklift market, and (c) calculate a percentage that the court then applies to old cases like *Ainsworth* which didn't conduct such slicing. And we would have to do all of this at the 12(b)(1) stage to determine the threshold question of personal jurisdiction. The complications introduced by such an approach counsel rejecting it.

C

Finally, Samsung relies heavily on a recent decision from the Ninth Circuit. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023). In that case, the plaintiff Yamashita was injured by an 18650 battery that he bought from a third party in Hawaii. *Id.* at 501. Yamashita sued the manufacturer of the battery, a South Korean company named LG Chem. *Ibid.* The district court granted LG Chem's motion to dismiss for lack of personal jurisdiction, and Yamashita appealed. *Id.* at 502. A Ninth Circuit panel affirmed the district court's grant of the motion to dismiss and denial of jurisdictional discovery. *Id.* at 508–09. In its analysis of the second issue, our sister circuit seemed to follow Samsung's reading of *Ford*:

> Yamashita seeks evidence that LGC and LGCA have forum contacts related to the use of lithium-ion batteries, and particularly 18650 batteries, in consumer products. Yamashita hypothesizes that these firms either are directly responsible for shipping such batteries into Hawaii . . . .

> Such contacts might satisfy the 'relates to' prong of the specific personal jurisdiction test if causing one's lithium-ion batteries to be incorporated into consumer products meant entering the consumer market for stand-alone lithium-ion batteries. But this is implausible. Whether the relevant market is that for lithium-ion batteries generally or that for 18650 batteries specifically, the relevant market is the consumer market. The logic of *Ford* did not turn on the mere fact that Ford had introduced some Explorers and Crown Victorias into Montana and Minnesota, but on the fact that it marketed these models to consumers, sold them to consumers, and serviced them for consumers. *Ford* gives little reason to think that the relatedness prong would have been satisfied if, for example, Ford had sold Crown Victorias only to police departments in Minnesota, had not marketed them to consumers, and had not serviced them at all. Such contacts would not typically cause, and could not be

foreseen to cause, injuries resulting from consumer ownership of Crown Victorias, especially if most consumer-owned Crown Victorias were acquired out-of-state. Similarly, even if LGC or LGCA sells 18650 batteries to manufacturers for incorporation in consumer products sold in Hawaii, these sales would not be related to purchases of stand-alone batteries by Hawaii consumers.

*Id.* at 507–08.

The Ninth Circuit interpreted *Ford* to hold that "relatedness proxies for causation, ensuring jurisdiction over a class of cases for which causation seems particularly likely but is not always easy to prove. On this line of reasoning, a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts." *Id.* at 505. This "causal proxy" view of relatedness then appeared in the block quotation above, where the panel asked whether the defendant's contacts would "typically *cause*" or could be "foreseen to *cause*" the in-state injury. *Id.* at 508 (emphasis added).

With all respect for our learned colleagues to the West (and our esteemed dissenting colleague who agrees with them, *see post*, at 6–8), we understand *Ford* differently. According to our best reading of *Ford*, the first part of the relatedness standard ("arise out of") is about causation, but the second half ("relate to") is not: "The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing." *Ford*, 592 U.S. at 362. And the Court did not hold that relatedness was solely a proxy for causation, however loose. In fact, the Court explicitly noted that personal jurisdiction would still be permitted if a plaintiff had made an out-of-state purchasing decision without considering any of Ford's activities in her home State. *Id.* at 367 n.5. That hypothetical situation contains no evidence of causation but still permits the exercise of specific personal jurisdiction.

We are more persuaded by the Sixth Circuit's interpretation of *Ford* in *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651 (6th Cir. 2023). LG Chem manufactured an 18650 battery that exploded in a Michigan resident's pocket in Michigan. *Id.* at 656–57. The resident then sued LG Chem in Michigan state court. *Id.* at 657. While LG Chem shipped 18650 batteries to various corporate clients in Michigan, it did not sell directly to consumers like Sullivan. *Id.* at 658–59. Thus, the company tried the same "different market" argument Samsung has raised before our court. *See id.* at 672.

The Sixth Circuit rejected the argument. The "different market" interpretation was "too narrow a framing, and one disguising the rejected causation analysis" from *Ford*. *Ibid.* LG Chem's choice of customer or intended product use might have been relevant to liability, but it was not relevant to personal jurisdiction. *Id.* at 672 n.8. The plaintiff was a Michigan resident who was injured in Michigan by LG Chem's product—"the same type of product that LG Chem shipped into Michigan around this time period." *Id.* at 673. Thus, relatedness was proper there. So too here.[7]

## D

Finally, our dissenting colleague says two Fifth Circuit cases are "irreconcilable" with today's decision. *Post*, at 13 (JONES, J., dissenting). With utmost respect for our esteemed colleague, we read these cases differently.

The dissenting opinion first points to "core principles of fairness to non-resident defendants," *ibid.*, as discussed in *Johnson v.*

---

[7] Both Samsung, in a post-argument 28(j) letter, and the dissent raise another out-of-circuit authority: *B.D. ex rel. Myer v. Samsung SDI Co., Ltd.*, 91 F.4th 856 (7th Cir. 2024) (per curiam). *See also post* at 8 (JONES, J., dissenting). That case is neither relevant to nor persuasive on the issue of relatedness. The panel made no finding about relatedness and remanded for further jurisdictional discovery on both relatedness and purposeful availment. 91 F.4th at 862–64.

*TheHuffingtonPost.com*, 21 F.4th at 320. Those principles include "fair warning that [defendants'] activities could furnish jurisdiction in the forum" and the defendant's ability to "limit or avoid his exposure to the courts of a particular state." *Ibid.* (citing *Ford*, 592 U.S. at 360). But *Ford*, and our decision today, accounts for this. By "conducting so much business in" Texas, Samsung "enjoys the benefits and protection of [its] laws—the enforcement of contracts, the defense of property, the resulting formation of effective markets." *Ford*, 592 U.S. at 367 (quoting *Int'l Shoe*, 326 U.S. at 319). That activity provides "clear notice that [Samsung] will be subject to jurisdiction in [Texas courts]" when the very same product it sells in Texas "malfunctions there." *Id.* at 368 (citing *World-Wide Volkswagen*, 444 U.S. at 297).

*Johnson* is also factually inapposite. That case concerned an allegedly libelous story published about a Texas resident by an out-of-state defendant. 21 F.4th at 316–17. Applying Supreme Court precedent, the panel asked "whether the forum [S]tate was the focal point of the alleged libel and of the harm suffered." *Id.* at 318 (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)). It was neither: The story at issue did not mention Texas, concerned events outside of the State, and involved no Texan sources. *Id.* at 319. The Huffington Post had not purposefully availed itself of Texas, and the plaintiff failed to establish that injury occurred in Texas. So the "in-state injury" part of *Ford*'s test was lacking.

*Pace v. Cirrus Design Corporation*, 93 F. 4th 879 (5th Cir. 2024), is similarly distinguishable. In that case, a Mississippi resident sought to establish personal jurisdiction in Mississippi over foreign defendants for injuries suffered in Texas. *Id.* at 887–88. But here, as in *Ford*, the relevant injuries occurred within the forum State. *See Ford*, 592 U.S. at 356. That detail, though

"not a silver bullet for obtaining specific personal jurisdiction," *post* at 10, makes a difference.[8] *Ford*, 592 U.S. at 369–70.

\* \* \*

In closing, one broader point bears emphasis. No one debates that Texas's long-arm statute enables the State's courts to exercise personal jurisdiction over Samsung. *See* Tex. Civ. Prac. & Rem. Code §§ 17.041–17.045. Under Rule 4 of the Federal Rules of Civil Procedure, federal courts mirror the scope of that exercise of personal jurisdiction. *See* Fed. R. Civ. P. 4(k)(1)(A). The only remaining obstacle is the Due Process Clause of the Fourteenth Amendment. So Samsung must show that such an exercise of personal jurisdiction is unconstitutional.

The nature of that constitutional objection should give us pause. How should we analyze the contention that personal jurisdiction offends "fair play and substantial justice"? The doctrine does not come from constitutional text or original law. *See Ford*, 592 U.S. at 384 (Gorsuch, J., concurring in the judgment); *cf.* Stephen E. Sachs, Pennoyer *Was Right*, 95 Tex. L. Rev. 1249 (2017); Lawrence B. Solum & Max Crema, *Originalism and Personal Jurisdiction: Several Questions and a Few Answers*, 73 Ala. L. Rev. 483 (2022). It instead turns on the substantive component of the Due Process Clause, as interpreted by binding Supreme Court precedent. So the only way to resolve cases like this one is to ask whether the defendant carried its burden to show that Supreme Court precedent gives it the right to object to personal

---

[8] *Cappello v. Rest. Depot, LLC* is inapposite for the same reason. 89 F.4th 238 (1st Cir. 2023); *see also post* at 12 (Jones, J., dissenting). In *Cappello*, the plaintiff did not use the relevant product in the forum State. *Id*. at 246. Moreover, *Cappello*'s attempt to distinguish the automobile products in *Ford* as especially "mobile" or "durable," *see ibid.*, conflicts with the Supreme Court's rejection of a similar kind of automobile exceptionalism in *World-Wide Volkswagen*, *see* 444 U.S. at 295–99.

jurisdiction in the forum State. *See Ford*, 592 U.S. at 384 (Gorsuch, J., concurring in the judgment). While we acknowledge that reasonable jurists can interpret that precedent differently, we think Samsung failed to carry its burden.

We REVERSE the district court's grant of Samsung's motion to dismiss for lack of personal jurisdiction and REMAND for further proceedings.

Edith H. Jones, *Circuit Judge*, dissenting:

Taking the wrong side on an issue that has divided state and federal courts,[1] the majority regrettably departs from first principles of specific personal jurisdiction by overreading *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. 351, 141 S. Ct. 1017 (2021). In so doing, the majority splits with the unanimous Ninth Circuit opinion in *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023), fails to reconcile our own recent precedents in *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021), and *Pace v. Cirrus Design Corp. (Pace I)*, 93 F.4th 879 (5th Cir. 2024), and therefore destabilizes this area of law.

The unilateral choices of an individual-consumer plaintiff have not been determinative of specific jurisdiction in modern history. Instead, an unbroken string of Supreme Court cases, with a recent, narrow exception in *Ford*, focus on the purposeful actions of the defendant in a forum state. Here, the defendant's forum-state activities are wholly unrelated to the plaintiff's purchase and use of the relevant product. Therefore, because Ethridge purchased the battery for his vape pen through a channel that Samsung never authorized, the fact of his injury should not make Texas a valid forum consistent with Due Process. I respectfully dissent and would affirm the district court's dismissal of Ethridge's claims.

---

[1] *Compare Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023), *and State ex rel. LG Chem, Ltd. v. McLaughlin*, 599 S.W.3d 899 (Mo. 2020), *and Davis v. LG Chem, Ltd.*, 849 F. App'x 855 (11th Cir. 2021), *and Durham v. LG Chem, Ltd.*, Nos. 21-11814, 21-11817, 21-11821, 21-11826, 21-11828, 2022 WL 274498 (11th Cir. Jan. 31, 2022), *with Sullivan v. LG Chem, Ltd.*, 79 F.4th 651 (6th Cir. 2023), *and LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341 (Tex. 2023), *and Dilworth v. LG Chem, Ltd.*, 355 So. 3d 201 (Miss. 2022).

## I.

## A.

The lodestar principle of modern personal jurisdiction is that "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S. Ct. 1115, 1122 (2014). A focus on the liberty and due process interests of the nonresident defendant necessarily means focusing on the nonresident's actions. If a defendant is "not present within the territory of the forum," then due process demands that the defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343 (1940)).

Specific jurisdiction arising from such contacts is grounded in the idea of reciprocity between a defendant and a State. "Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006). But by the same token, "[f]or specific jurisdiction, a plaintiff must link the defendant's suit-related conduct to the forum. Mere market exploitation will not suffice." *Johnson*, 21 F.4th at 324; *see also Pace I*, 93 F.4th at 900 ("We agree with [the Defendant] that [the Plaintiff] failed to connect the Texas [airplane] crash either to the 'business Cirrus *might* do in Mississippi' or to the business it did with the Mississippi residents who sold the aircraft to a non-party two years prior to the crash.") (emphasis in original). As the Court explained simply in *Ford*: "When (but only when) a company 'exercises the privilege of conducting activities within a state'—thus 'enjoy[ing] the

benefits and protection of [its] laws'—the State may hold the company to account for related misconduct." *Ford*, 592 U.S. at 360, 141 S. Ct. at 1025 (quoting *Int'l Shoe*, 326 U.S. at 319, 66 S. Ct. at 160) (alterations in original).

## B.

Relatedness requires much more than Ethridge can show in this case: a "strong relationship among the defendant, the forum, and the litigation." *Ford*, 592 U.S. at 365, 141 S. Ct. at 1028 (quotation marks and citation omitted). This requirement ensures that there are "real limits" to a state's exercise of specific personal jurisdiction over non-resident defendants. *Id.* at 362, 141 S. Ct. at 1026. In this case, there is no link between Samsung's sales of goods to manufacturers and the plaintiff's injuries, which arose from a direct-to-consumer purchase and involved distribution channels that Samsung did not participate in and never authorized. Holding that Samsung is amenable to personal jurisdiction in spite of these facts is an unfortunate error that could prove catastrophic for out-of-state business defendants, large and small, throughout the country. On one hand, a relationship clearly exists between Samsung and Texas via Samsung's sales of lithium-ion battery cells as component parts to industrial suppliers in Texas. On the other hand, Ethridge and Texas are related because his injuries occurred here. But those two relationships are completely independent of each other.

*Ford* cannot transform two pumpkin seeds into a stagecoach for Ethridge's claims because there is nothing to link Samsung's sales of component parts to industrial entities in Texas and the plaintiff's consumer purchase of a single lithium-ion battery from a Wyoming-based third-party seller. *Ford* does not authorize States to exercise personal jurisdiction over out-of-state defendants because of the unilateral acts of plaintiffs or third parties. *See also Pace I*, 93 F.4th at 901 ("In our case, [the Plaintiff] is a resident of the relevant state, and the needed link is between the state and the

specific claims against the nonresident defendants. Without this link, specific jurisdiction will be lacking, regardless of even regularly occurring sales or activities within the forum."). Indeed, Samsung followed *Ford*'s express guidance to "'structure [its] primary conduct' to *lessen* . . . exposure" to courts in Texas by avoiding sale to the individual-consumer market. *Ford*, 592 U.S. at 360, 141 S. Ct. at 1025 (quoting *World-Wide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567) (alterations in original) (emphasis added).

From Samsung's perspective, Ethridge's claims are as remote from its Texas activities as Bristol-Myers Squibb's activities in California were from the non-California plaintiffs in *Bristol-Myers Squibb Co. v. Superior Ct. of Calif.*, 582 U.S. 255, 137 S. Ct. 1773 (2017). The only thing that distinguishes the cases is that Ethridge is a citizen of Texas and was injured here. But Samsung had no notice of either of these facts, nor any ability to account for them when it established business relationships in Texas and created the contacts that Ethridge now seeks to exploit jurisdictionally.

## II.

This case asks us to mediate what *Ford* allows and what *Bristol-Myers*, *id.*, *Walden*, 571 U.S. at 277, 134 S. Ct. at 1115, and *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780 (2011), forbid.

### A.

To begin, I would "look beyond *Ford*'s holding to its reasoning," as the Ninth Circuit did. *Yamashita*, 62 F.4th at 505. The majority only constructs their reading of *Ford* to establish a "same product plus in-State injury test," *ante* at 8, by discounting key aspects of the Court's opinion in *Ford*. The Supreme Court explained that Ford's "forum contacts may well have played a causal role in the introduction to the forum state of the particular vehicle causing the injury" because "the owner may have seen

'ads for the [model] in local media,' or 'take[n] into account a raft of Ford's in-state activities designed to make driving a Ford convenient there.'" *Id.* (quoting *Ford*, 592 U.S. at 367, 141 S. Ct. at 1029) (alterations in original). In other words, while specific personal jurisdiction did not turn on whether the plaintiffs purchased their products within the forum states, it was relevant that the plaintiffs *could* have purchased the products there—or *could have been influenced to purchase the products there*—due to defendant's efforts to sell the same products to the same target consumers in the forum state. *See Ford*, 592 U.S. at 365, 141 S. Ct. at 1028 ("Contrast a case, which we do not address, in which Ford marketed the models in only a different State or region."). Most importantly, in *Ford*, the plaintiffs had an actual opportunity to purchase, service, or resell their vehicles in the forum state *through channels authorized by Ford*.

No such opportunity was available to Ethridge. He could not obtain Samsung's lithium-ion battery cells from Samsung's authorized distribution channels in Texas as a direct-to-consumer product for use in an e-cigarette. Instead, Samsung structured its business to avoid selling, marketing, or advertising the battery cells at issue to individual Texas consumers for any purpose. Samsung's sole act in "avail[ing] itself of the privilege of conducting activities within" Texas consists of distributing its batteries (a) to Stanley Black & Decker to be incorporated into sealed power-tool battery packs, and (b) to HP and Dell for use in laptop repairs by service centers. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958). In auto terms, this would be somewhat like subjecting Ford to specific personal jurisdiction for a tort claim involving Ford Explorers when it only sold and marketed F-150s to delivery companies in the relevant forum state. At the appropriate level of generality, these are not the same products or markets, and such contacts with the forum state should be irrelevant for establishing

relatedness. *Ford* does not "resolve[] the relatedness issue in this case." *See ante* at 12.

The Ninth Circuit properly concluded that under *Ford*, "relatedness proxies for causation" such that "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts." *Yamashita*, 62 F.4th at 505. As the Ninth Circuit emphasized, *Ford did* include a foreseeability analysis, and the Court repeatedly noted the importance of Ford's "'extensively market[ing]' the car models at issue in the forum states" for establishing personal jurisdiction. *Id.* (quoting *Ford*, 592 U.S. at 368, 141 S. Ct. at 1030) (alterations in original). "On this line of reasoning, a plaintiff's injury relates to a defendant's forum contacts if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Id.* at 506. Absent foreseeability, defendants would not be properly on notice about the kinds of contacts that would subject them to specific personal jurisdiction. Abandoning this element entirely would make *Ford* irreconcilable with the Court's prior precedents, which it declined to repudiate in *Ford*, as well as with the "traditional conception[s] of fair play and substantial justice" that have been the hallmark of personal jurisprudence since *International Shoe*, 326 U.S. at 320, 66 S. Ct. at 160.

Contra the majority, at least considering what market within a potential forum state a defendant avails itself of is not some novel "understanding of the Fourteenth Amendment." *See ante* at 13. Rather, the Court endorses a fact-sensitive evaluation of defendants' actions: *how* a defendant avails himself of a forum affects on what grounds the defendant may "be[] haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567. If that did not matter, then the *Ford* Court never would have recognized that a "defendant can thus 'structure [its] primary conduct' to *lessen* . . . exposure to a given State's courts," not just to "avoid" exposure

entirely. *See* 592 U.S. at 360, 141 S. Ct. at 1025 (quoting *World-Wide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567).

Moreover, the Ninth Circuit correctly noted that reading *Ford* to "suggest that relatedness requires a close connection between contacts and injury" satisfies the need for limiting principles, lest the *Ford* test be read to collapse the core distinction between general and specific personal jurisdiction. *Yamashita*, 62 F.4th at 506; *see also Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022). While I do not suggest that the majority's opinion means that literally "anything goes," the majority's opinion lacks a clear limiting principle. With no clear limit, this opinion undermines the due process rights of out-of-state defendants, and large and small businesses alike.

The Ninth Circuit's analogy and analysis, which the majority quotes, but then unceremoniously swats away, is spot-on:

> Whether the relevant market is that for lithium-ion batteries generally or that for 18650 batteries specifically, *the relevant market is the consumer market*. The logic of *Ford* did not turn on the mere fact that Ford had introduced some Explorers and Crown Victorias into Montana and Minnesota, but on the fact that it marketed these models to consumers, sold them to consumers, and serviced them for consumers. *Ford* gives little reason to think that the relatedness prong would have been satisfied if, for example, Ford had sold Crown Victorias only to police departments in Minnesota, had not marketed them to consumers, and had not serviced them at all. *Such contacts would not typically cause, and could not be foreseen to cause, injuries resulting from consumer ownership of Crown Victorias, especially if most consumer-owned Crown Victorias were acquired out-of-state.* Similarly, even if LGC or LGCA sells 18650 batteries to manufacturers for incorporation in consumer products sold in

Hawaii, these sales would not be related to purchases of stand-alone batteries by Hawaii consumers.

*Yamashita*, 62 F.4th at 507–08 (emphases added). The relevant market in this case, just as in *Yamashita*, is the consumer market, and Samsung's contacts with the industrial market likewise have *nothing* to do with the types of injuries sustained by Ethridge in this case.

*Yamashita* correctly understood *Ford*'s underlying logic: relatedness is a proxy for causation, and specific personal jurisdiction turns on whether the defendant's contacts "typically cause" or could be "foreseen to cause" the plaintiff's injury in the forum state. *See id.* at 505, 508. Indeed, the Seventh Circuit has rejected a similar theory of relatedness, holding that Samsung's sales of "some batteries—but not 18650 batteries—directly to Indiana utility companies for use in power grids" was insufficient to satisfy relatedness because the plaintiff's claim in that case "does not arise out of or relate to those batteries." *B.D. by & through Myer v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 862 (7th Cir. 2024). According to the Seventh Circuit, jurisdiction under the plaintiff's theory turned on Samsung's "knowledge and expectations," which could not be ascertained based on the record. *Id.* Thus, the panel remanded for jurisdictional discovery on purposeful availment and relatedness, noting that "[j]urisdictional discovery could yield facts as to whether Samsung SDI's contacts with Indiana are related to the injury." *Id.* at 863.[2]

---

[2] On remand, the district court in *B.D.* examined whether Samsung knew that *individual* 18650 batteries could reach consumers in Indiana. The district court recognized that the plaintiffs' claims "do[] not arise out of Samsung's sale of 18650 batteries as component part[s] of other products, like laptop computer[s] or power tools." No. 2:22-cv-00107-MPB-MKK, 2024 WL 3897040, at *5 (S.D. Ind. July 17, 2024) (quotation marks

Disagreeing with the Ninth Circuit, the majority puzzlingly assert that "the first part of the relatedness standard ('arise out of') is about causation, but the second half ('relate to') is not." *Ante* at 17. The majority compound uncertainty by observing that *Ford* "explicitly noted that personal jurisdiction would still be permitted if a plaintiff had made an out-of-State purchasing decision without considering any of Ford's activities in her home State." *Ante* at 17 (citing *Ford*, 592 U.S. at 367 n.5, 141 S. Ct. at 1029 n.5). No out-of-state purchasing decision is implicated in this case, and a sole focus on the *plaintiff's* decision-making process, and total ignorance of the defendants', is not consistent with traditional conceptions of fair play and substantial justice, or with multiple Supreme Court precedents.

The majority's vague answer to the Ninth Circuit's reasoning falls into the jurisprudential donut hole identified by Justice Alito in his *Ford* concurrence. First, the majority parses *Ford*'s language "as though we were dealing with the language of a statute." *Ford*, 592 U.S. at 373, 141 S. Ct. at 1033 (Alito, J., concurring in the judgment) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 341, 99 S. Ct. 2326, 2332 (1979)). Second, the majority's argument that "relate to" can mean something completely divorced from causation raises the possibility of circumventing the Court's other personal

---

and citation omitted) (second and third alterations in original). Framed in this way, the district court in *B.D.* concluded that:

> Not only did Samsung not know that 18650 batteries were being sold for use in e-cigarettes in Indiana, it actively tried to control their distribution to prevent such unauthorized uses. The fact that Samsung's efforts were ultimately unsuccessful because of the unauthorized activities of third-parties does not establish that Samsung purposefully availed itself of the privileges of doing business in Indiana.

*Id.* Thus, following jurisdictional discovery, the district court dismissed B.D.'s lawsuit for lack of personal jurisdiction. *Id.* at *6.

jurisdiction precedents. *Id.* at 373–75, 141 S. Ct. at 1033–34 (Alito, J., concurring in the judgment). That creates a difficult situation here. In *Ford*, Justice Alito practically observed that nobody could "seriously argue that requiring Ford to litigate these cases in Minnesota and Montana would be fundamentally unfair." *Id.* at 372, 141 S. Ct. at 1032 (Alito, J., concurring in the judgment). But the distribution of and customers for Samsung's batteries is nothing like the distribution of or customers for Fords. Samsung's (a foreign corporation's) argument that it would be fundamentally unfair to force it to litigate in Texas ought to be taken seriously.

## B.

Critically, the reasoning in *Bristol-Myers*, *Walden*, and *J. McIntyre* is based uniformly on conceptions of notice to the defendant. The limits on a forum's ability to exercise personal jurisdiction principally protect non-resident defendants, leading the Supreme Court to "consistently reject[] attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284, 134 S. Ct. at 1122. And to repeat, the link between Samsung's sales into Texas and Ethridge's claims is non-existent. Moreover, an in-state injury is not a silver bullet for obtaining specific personal jurisdiction. "[A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id.* at 290, 134 S. Ct. at 1125. Where there is no connection between the plaintiff's injury and the defendant's contacts to the state, "where a plaintiff lives or works" is *wholly irrelevant* to jurisdiction over the nonresident defendant. *Id.*

The near-unanimous opinion in *Bristol-Myers* applied these principles and rejected the California Supreme Court's "sliding scale approach," in which "the strength of the requisite connection between the forum and the

specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." *Bristol-Myers*, 582 U.S. at 264, 137 S. Ct. at 1781. That approach, *Bristol-Myers* reasoned, risked blurring the fundamental line between general and specific jurisdiction. To do otherwise would risk adopting the approach preferred by Justice Sotomayor's solo dissent: if you're big enough, you can be sued just about anywhere. *See id.* at 269, 137 S. Ct. at 1784 (Sotomayor, J., dissenting) ("[T]here is nothing unfair about subjecting a massive corporation to suit in a State for a nationwide course of conduct that injures both forum residents and nonresidents alike.").

As *Bristol Myers* observed, "[w]hat is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id.* at 265, 137 S. Ct. at 1781. In *Bristol-Myers*, sales to third parties and research on matters unrelated to the plaintiffs' claims was properly deemed insufficient and irrelevant. *Id.* The Court in *Bristol-Myers* emphasized that "[e]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Id.* at 264, 137 S. Ct. at 1773 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 930 n.6, 131 S. Ct. 2846, 2857 n.6 (2011)). "Erasing the line between specific and general jurisdiction as [Ethridge] proposes would vitiate the sovereign interests of the states where defendants like [Samsung] are 'at home.' General jurisdiction for every state where [Samsung's lithium-ion batteries can be purchased through online third-party sellers] destroys its meaning for [Samsung's] home states, to whom that awesome power is properly reserved." *Johnson*, 21 F.4th at 324.

The substance of a defendant's actual contacts with a forum was also at issue in *J. McIntyre*, where the plurality held that an intention to serve the U.S. market is not the same as an intention to serve the New Jersey market. 564 U.S. at 885–87, 131 S. Ct. at 2790–91. So too here. An intention to sell

to the industrial market has nothing to do with an intention to sell directly to consumers, as manufacturers choose distribution channels based on both the geographic locations and types of customers those distribution channels serve. To assume that one type of distinction is paramount for the purposes of personal jurisdiction while another is wholly irrelevant is to ignore the decisions that companies large and small make every day. After all, "[t]he question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment *concerning that conduct*." *See J. McIntyre*, 564 U.S. at 884, 131 S. Ct. at 2789 (plurality opinion) (emphasis added). Ultimately, "there is little reason to believe" that Samsung's contacts with sophisticated manufacturers and industrial users of its battery cells "have anything to do" with Texas residents' online, out-of-state acquisitions of Samsung's lithium-ion battery cells for use in e-cigarettes. *Yamashita*, 62 F.4th at 507.

Unlike the majority, I would not reject Samsung's reliance on different markets as an "unworkable" theory leading to a parade of horribles. *Ante* at 13–14. Instead, the First Circuit's recent opinion shows that a proper market segmentation analysis can and should be done in cases like this. *Cappello v. Rest. Depot, LLC*, 89 F.4th 238, 246 (1st Cir. 2023). In *Capello*, the First Circuit held that the plaintiff failed to show that Restaurant Depot's offer of memberships to businesses in New Hampshire "had anything to do" with the injuries he sustained as a "retail customer (a type of customer Restaurant Depot does not and cannot serve) purchasing a salad at a restaurant in" another state. *Id.* The same principle applies here: the district court correctly concluded that Ethridge failed to show that Samsung's contacts with Black & Decker, HP, or Dell had anything to do with the injuries he sustained in Texas.

## C.

The majority opinion is also irreconcilable with our own precedent. The majority ignores our post-*Ford* opinion in *Johnson*, which laid out core principles of fairness to non-resident defendants:

> Fairness to defendants has at least two elements. *First*, defendants must have fair warning that their activities could furnish jurisdiction in the forum. That's the idea behind purposeful availment. Where a defendant lacks suit-related ties with the forum or did not forge those ties himself, he cannot reasonably expect a suit there. *Second*, a defendant must have some chance to limit or avoid his exposure to the courts of a particular state. *That's why a state cannot use a defendant's forum contacts—even purposeful ones—to invent jurisdiction over claims that do not relate to or arise from those contacts.*

21 F.4th at 320 (quotation marks and citations omitted) (third emphasis added). In *Johnson*, the court continued: "Just as jurisdiction is proper when a defendant intentionally creates *suit-related contacts* with the forum, jurisdiction is absent where a defendant does not reach, or has ceased to reach, into the forum state *in that way*." *Id.* at 322 (emphases added). "That principle," we noted, "does not require defendants to wall themselves off from the world." *Id.* But isn't that exactly what the majority effectively asks of Samsung and other companies in the age of e-commerce, given that more than 60% of Amazon's sales come from third-party sellers?[3]

The majority similarly fails to grapple with our even more recent decision in *Pace I*, where a Mississippi pilot was injured in an airplane crash in Texas, allegedly because of various malfunctioning parts. 93 F.4th at 887–

---

[3] *See* Mickey Toogood, *Amazon selling stats*, Amazon (May 10, 2024), https://sell.amazon.com/blog/amazon-stats#Amazon%20Seller%20Sale.s.

88. The pilot filed suit in Mississippi against various out-of-state corporate defendants, "argu[ing] the corporate defendants' conduct . . . mirror[ed] that in *Ford*." *Id.* at 887–88, 900. But we found *Bristol-Meyers Squibb* to be a closer analogue for want of relatedness. *Id.* at 901–02. Although there was some factual dispute as to the exact contours of the defendants' Mississippi contacts, the court in *Pace I* and in a subsequent appeal of the same case found alleged marketing insufficient even though they indisputably did "serve the forum." *Id.* at 900–02; *Pace v. Cirrus Design Corp. (Pace II)*, No. 23-60465, 2024 WL 2817567, at *5 (5th Cir. June 3, 2024) ("[W]e can safely reject Pace's generalizations [about the defendants' marketing in the forum] for the same reasons stated in our decision in *Pace I*—namely, that he fails to link any representation, advertisement, or other communication made to the forum with his claims."). And *Pace I* even rejected jurisdiction over a defendant who previously serviced *the exact same airplane*—not merely another of the same model—for other Mississippi residents because that contact was unrelated to the plaintiff's claims. *Id.* at 901–02. Following our circuit's own guidance, the relatedness requirement to exercise specific personal jurisdiction demands more than a defendant merely serving other customers in the forum in a completely unrelated way, *i.e.*, by selling only to select, industrial purchasers and not to individual consumers.

III.

The majority's approach would allow consumers to force manufacturers to entertain a products liability lawsuit for *any* product in *any* forum, so long as the manufacturer engages in *some* activity in that forum. And that would be the case even if, as here, the manufacturer intentionally avoids selling the subject product to consumers in that forum. According to the majority, an unauthorized out-of-state third-party seller's shipping the desired product to the forum is enough to confer jurisdiction. How can Samsung's decision to structure its business to strenuously avoid direct-to-

consumer sales be irrelevant for the purposes of due process? Yet that decision by Samsung must be critically important in the specific personal jurisdiction analysis. Otherwise, the principles of reciprocity and mutuality are compromised, along with the predictability and notice that the judicial system owes to businesses large and small.

Here, the only link between Ethridge's injuries and Samsung runs through a third-party seller. Although a defendant who "enjoy[s] the benefits" of a market may be held to account "for *related* misconduct" in that market, exercising jurisdiction over a defendant based on "benefits" an unauthorized third-party seller reaped is incoherent and unfair. *Ford*, 592 U.S. at 360, 141 S. Ct. at 1025 (emphasis added). Jurisdiction cannot be premised on the fact that a defendant's "products are distributed through a nationwide distribution system that *might* lead to those products being sold in any of the fifty states" because this would "rest jurisdiction . . . upon no more than the occurrence of a product-based accident in the forum State." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 178–79 (5th Cir. 2013) (quoting *J. McIntyre*, 564 U.S. at 891, 131 S. Ct. at 2793 (Breyer, J., concurring in judgment)) (emphasis in original).

For all of these reasons, I respectfully dissent.