# In the United States Court of Appeals for the Fifth Circuit

JAMES ETHRIDGE,
*Plaintiff-Appellant,*

v.

SAMSUNG SDI CO., LTD.,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Texas, Galveston
Case No. 3:21-cv-306 (The Hon. Jeffrey V. Brown)

## RESPONSE TO PETITION FOR REHEARING EN BANC

A. CRAIG EILAND
LAW OFFICES OF A. CRAIG EILAND, P.C.
2200 Market Street, Suite 501
Galveston, TX 77550
(409) 763-3260

JONATHAN E. TAYLOR
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*jon@guptawessler.com*

June 9, 2025                          *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Plaintiff-Appellant**

James Ethridge

**Counsel for Plaintiff-Appellant**

Jonathan E. Taylor; A. Craig Eiland; Angela Nehmens; Gupta Wessler LLP; Peiffer Wolf Carr Kane Conway & Wise, LLP; Law Offices of A. Craig Eiland, PC; Levin Simes, LLP; Estey & Bomberger, LLP

**Defendants-Appellees**

Samsung SDI Co., Ltd.

**Counsel for Defendant-Appellee Samsung SDI Co., Ltd.**

Raymond M. Kutch, Jr.; William R. Moye; Kevin F. Risley; Tanya N. White; Christopher Emch; Thompson, Coe, Cousins & Irons LLP; Herbert Smith Freehills Kramer (US) LLP

**Counsel for Defendants-Appellees Amazon.com, Inc. and Amazon.com Services, Inc.**

Gregory F. Miller; Clifford Layne Harrison; Heriberto R. Montalvo; Munsch Hardt Kofp & Harr, PC; Perkins Coie, LLP; Reed Smith LLP

**Other Defendants in Underlying Case**

Macromall, LLC; Firehouse Vapors, LLC

**Counsel for Defendant in Underlying Case Firehouse Vapors, LLC**

Luke C. Carrabba; Miller, Scamardi & Carrabba, PC

**Counsel for Amicus Curiae Chamber of Commerce of the United States of America**

Scott A. Keller; Jennifer B. Dickey; Lehotsky Keller Cohn, LLP; U.S. Chamber Litigation Center

**Counsel for Amicus Curiae American Tort Reform Association**

Scott A. Keller; H. Sherman Joyce; Lehotsky Keller Cohn, LLP; American Tort Reform Association

**Counsel for Amicus Curiae National Association of Manufacturers**

Scott A. Keller; Michael A. Tilghman, II; Keller Cohn, LLP; National Association of Manufacturers

Dated: June 9, 2025                    */s/ Jonathan E. Taylor*
                                         Jonathan E. Taylor

# TABLE OF CONTENTS

Certificate of interested persons ................................................................. i

Table of authorities ............................................................................... iv

Introduction .......................................................................................... 1

Statement of the case ............................................................................. 2

    I.     Factual background ........................................................... 2

          A.    Samsung concedes that it serves the Texas market
              for 18650 batteries through regular, direct sales to
              the State ................................................................... 2

          B.    A Samsung 18650 battery injures a Texas resident
              in Texas .................................................................... 3

    II.    Procedural background ...................................................... 4

          A.    The district court holds that personal jurisdiction is
              lacking because Samsung's efforts to serve the Texas
              18650-battery market did not specifically cause
              Ethridge's injury ...................................................... 4

          B.    A panel of this Court applies the Supreme Court's
              holding in *Ford* and reverses the trial court's judgment ............. 5

Reasons to deny the petition ................................................................... 7

    I.    The panel opinion correctly interprets the rule announced by
       the Supreme Court in *Ford* and correctly applies it to this case ........... 7

    II.    The panel opinion is fully consistent with—and reinforced
       by—this Court's personal-jurisdiction precedents ............................. 12

    III.    Far from asking this Court to "resolve" any circuit split,
        Samsung is really asking this Court to *create* a split between
        this Court and two state supreme courts within this Circuit ............... 14

Conclusion ......................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Ainsworth v. Moffett Engineering, Ltd.*,
 716 F.3d 174 (5th Cir. 2013) ............................................................... 14

*Bristol-Myers Squibb Co. v. Superior Court of California*,
 582 U.S. 255 (2017) ...................................................................... 11, 13

*Dilworth v. LG Chem, Ltd.*,
 355 So.3d 201 (Miss. 2022) ......................................................... 1, 11, 14

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
 92 U.S. 351 (2021) ........................................................................*passim*

*Johnson v. TheHuffingtonPost.com, Inc.*,
 21 F.4th 314 (5th Cir. 2021).......................................................... 12, 13

*LG Chem America, Inc. v. Morgan*,
 670 S.W.3d 341 (Tex. 2023)......................................................... 1, 11, 14

*Pace v. Cirrus Design Corp.*,
 93 F.4th 879 (5th Cir. 2024) ........................................................ 12, 13

*Sullivan v. LG Chem, Ltd.*,
 79 F.4th 651 (6th Cir. 2023) .................................................... 1, 6, 11, 14

*Yamashita v. LG Chem, Ltd.*,
 62 F.4th 496 (9th Cir. 2023) ........................................................... 6, 14

**Other authorities**

*Global 18650 Lithium Battery Market*, GlobeNewswire: Industry Research,
 (Feb 14, 2022), https://perma.cc/AQF4-DHB8 ...................................2

Matthew E. Rossheim et al.,
 *Electronic Cigarette Explosion & Burn Injuries*, 28 Tobacco Control 472
 (2019), https://tobaccocontrol.bmj.com/content/28/4/472 ........................ 3

# INTRODUCTION

Four years ago, in *Ford Motor Co. v. Montana Eighth Judicial District Court*, the U.S. Supreme Court laid down a rule to govern personal-jurisdiction disputes in products-liability cases: "When a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." 592 U.S. 351, 355 (2021).

The panel in this case applied that rule. In an opinion by Judge Oldham, the panel held that Texas courts may entertain a suit brought by a Texas resident who was injured in Texas by a product made by Samsung (a battery). Because Samsung, like Ford, is a global behemoth that has sold thousands of those products directly to customers in Texas, the panel concluded that *Ford*'s rule had been satisfied.

That conclusion is correct, and there is no good reason for this Court to go en banc to revisit it. Two state supreme courts within this Circuit—including the Texas Supreme Court—have unanimously come to the same conclusion in cases involving the same type of battery. *See LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 348–51 (Tex. 2023); *Dilworth v. LG Chem, Ltd.*, 355 So.3d 201, 204–11 (Miss. 2022). The Sixth Circuit has too. *See Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 670–74 (6th Cir. 2023). And the State of Texas, through its Solicitor General, agrees. *See* Br. of Texas in *Morgan*, 2023 WL 3937921 (filed Mar. 15, 2023). This Court should reject Samsung's invitation to create a conflict between the federal and state courts in this Circuit and deny the petition.

## STATEMENT OF THE CASE

### I.   Factual background

#### A.   Samsung concedes that it serves the Texas market for 18650 batteries through regular, direct sales to the State.

Samsung is based in South Korea and known throughout the world. ROA.56. It is, among many other things, a leading global manufacturer of 18650 lithium-ion batteries, ROA.873—a versatile and interchangeable type of battery, ROA.371, that is used to power a wide range of consumer devices, from power drills to laptops.[1]

The global market for 18650 batteries is substantial—about $6.3 billion as of 2020. *See* Industry Research, GlobeNewswire, https://perma.cc/AQF4-DHB8. And so is Samsung's share of that market: Along with two other companies, Samsung controls nearly 80 percent of the global market for 18650 batteries. *Id.*

Samsung did not come to dominate the global market by ignoring the United States. To the contrary, Samsung has specifically targeted the U.S. market for 18650 batteries by selling millions of these batteries directly to customers in the States.

Texas is no exception. Samsung admits that it has sold large quantities of 18650 batteries directly to companies in Texas for incorporation into consumer electronic devices like power drills and laptops. *See* ROA.643–44 (admission of direct Texas sales to Black & Decker, Dell, and Hewlett Packard); ROA.641, 644 (admission of

---

[1] Unless otherwise specified, all internal quotation marks, emphases, footnotes, alterations, and citations are omitted from quotations throughout this brief.

"direct bulk sale of 18650 battery cells" to a different "Texas based entity"). Samsung also admits that Texas companies "are in the supply chain" for its 18650 batteries, ROA.644, which includes both consumer-product manufacturers and companies that assemble Samsung's batteries into battery packs later sold in Texas, ROA.641.

## B.    A Samsung 18650 battery injures a Texas resident in Texas.

This case concerns a Samsung 18650 battery that injured a Texas resident in Texas. In 2018, James Ethridge bought a Samsung 18650 battery for his e-cigarette device. ROA.55, 57, 64. A year later, he had the battery in his pocket when it spontaneously exploded and caught fire, severely injuring him. ROA.64, 68.

His experience was not unique. Hundreds, if not thousands, of 18650 batteries have exploded in recent years. *See* ROA.764–70 (listing 88 lawsuits against Samsung for injuries caused by battery explosions); Matthew E. Rossheim, *Electronic Cigarette Explosion & Burn Injuries*, US Emergency Departments 2015–2017, Tobacco Control (Aug. 17, 2018) (reporting over 2,000 injuries "presenting to US hospital emergency departments" from 2015 to 2017). But while Ethridge had no idea of this danger when he bought his battery, Samsung was keenly aware of the risks. ROA.702–03, 713–14. It admits that its 18650 batteries are not safe in e-cigarettes because they can catch fire or explode. ROA.645–46. Nor are they safe even when handled on their own, as this case shows. *Id.*; ROA.64. Yet Samsung has sold these batteries by the millions, with many aimed at Texas, without adding any safety features to reduce these risks.

## II. Procedural background

### A. The district court holds that personal jurisdiction is lacking because Samsung's efforts to serve the Texas 18650-battery market did not specifically cause Ethridge's injury.

Having been injured by Samsung's defective 18650 battery, Ethridge sued the company in Texas state court, asserting negligence and strict-liability claims against it. ROA.68–76. The case was removed to federal court, and Samsung moved to dismiss the claims against it for lack of personal jurisdiction.

Samsung did not dispute that it routinely sells its 18650 batteries directly to Texas customers. ROA.643–44. Instead, it opposed jurisdiction for two reasons. *First*, it argued that the suit does not relate to its Texas contacts because Ethridge "does not allege that the batteries [Samsung] shipped to [Texas companies] are among those that end up in Texas vape shops for purchase by individual consumers, only that the same type of battery, the 18650 lithium-ion battery, is shipped by [Samsung] to … Texas." ROA.936–37. *Second*, Samsung argued that, even if it served the Texas market for 18650 batteries by directly selling them in bulk to Texas companies, that is not "the relevant market for purposes of the jurisdictional analysis." ROA.937. The relevant market, according to Samsung, is the market for "a single [18650] battery cell for use with e-cigarettes at the consumer-retail level." *Id.* Having defined the market in this way, Samsung argued that jurisdiction was improper because it did not intend to serve that particular market. ROA.938–39. Rather than selling its

batteries directly to retailers to be sold for individual consumer use or for use in e-cigarette devices, Samsung sells its batteries for use as components in other electronic consumer products that are then sold to consumers by Texas retailers. ROA.946.

The district court granted the motion. It did not dispute that Samsung had purposefully availed itself of the Texas market for 18650 batteries. Yet the court agreed with Samsung that Ethridge's claims do not relate to Samsung's purposeful availment of the Texas market because Ethridge had not demonstrated a causal connection between Samsung's purposeful availment of Texas and the battery that injured him. Specifically, the court concluded that "there is evidence that Samsung shipped [18650] batteries to companies in Texas … …  but no evidence that the presence of the offending battery in Texas was the result of purposeful availment by Samsung as opposed to an unauthorized act by third parties." ROA.1095.

## B. A panel of this Court applies the Supreme Court's holding in *Ford* and reverses the trial court's judgment.

A panel of this Court reversed. Writing for the majority, Judge Oldham began his analysis with the Supreme Court's decision in *Ford*, which rejected a strictly causal view of relatedness. Op. 8. Rather than require causality, *Ford* held that, "[w]hen a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." 592 U.S. at 355. Based on that holding and a careful examination of the opinion, the panel read *Ford* "to adopt the following rule for relatedness: Where the defendant

sold a non-insignificant volume of product in the forum State, an in-state plaintiff's suit involving the in-state use of and in-state injury from the same product will satisfy the relatedness condition of specific personal jurisdiction." Op. 7–8.

The panel then applied that rule to the facts before it. It held that, because "Ethridge is a Texas resident, he used his 18650 battery in Texas, and he suffered an injury in Texas," "Texas can exercise personal jurisdiction over Samsung." Op. 12.

The panel declined to create an exception to *Ford*'s rule based on "Samsung's 'different market' counterargument." *Id.* That argument, explained Judge Oldham, "conflicts with longstanding Fourteenth Amendment doctrine," cannot be "reconcile[d] … with *Ford*," and is "inconsistent with the Supreme Court's whole-forum focus." Op. 13. It is also "unworkable," for it would allow foreign companies to try to escape jurisdiction by asking courts "to re-slice the forum sales along a potentially infinite number of different markets," casting a cloud over many of this Court's personal-jurisdiction precedents. Op. 14–15. The panel therefore agreed with the Sixth Circuit in *Sullivan*, which rejected a similar argument in an 18650-battery case against Samsung's chief rival (LG Chem). Op. 18. Further, the panel explained that its opinion was consistent with this Circuit's other post-*Ford* cases. Op. 18–20.

Judge Jones dissented. She would have created a conflict with the Sixth Circuit and two state supreme courts in this Circuit and instead followed the analysis set forth in a Ninth Circuit case, *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023).

**REASONS TO DENY THE PETITION**

Samsung gives three reasons why this Court should grant rehearing en banc. *First*, it argues that the panel misconstrued the rule announced by the Supreme Court in *Ford*. *Second*, Samsung claims that the panel opinion conflicts with two post-*Ford* decisions from this Circuit. *Third*, Samsung contends that the panel opinion creates a circuit split and that rehearing is necessary to "resolve" this split. Pet. 16.

Samsung is mistaken. The panel opinion faithfully applies *Ford* and is fully consistent with this Court's precedents. It also represents the dominant view among the many appellate judges who have addressed this question. And while it is true that some appellate judges have taken a different view, any conflict among the circuits was not created by this panel and thus cannot be resolved by this Court en banc. Very much the opposite: Far from asking the en banc Court to *resolve* a split, Samsung is really asking it to *create* a split with two state supreme courts in this Circuit—including the Texas Supreme Court. This Court should decline that invitation.

## I.  The panel opinion correctly interprets the rule announced by the Supreme Court in *Ford* and correctly applies it to this case.

Samsung asks this Court to correct what it says is a "fundamental misreading of *Ford*." Pet. 14. But the panel's understanding of *Ford* follows from a straightforward application of the rule announced by the Supreme Court. And it aligns with the clear majority of appellate courts to address this question in published decisions in similar cases, including the Texas and Mississippi Supreme Courts and the Sixth Circuit.

**A.** *Ford* sets forth its rule at the outset of its opinion: "When a company like Ford serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." 592 U.S. at 355. This rule incorporates all three of the traditional requirements of specific personal jurisdiction: When a company "serves a market for a product in a State," it has purposefully availed itself of the privilege of conducting activities there. *Id.* When "that product causes injury in the State to one of its residents," *id.*, "there is a strong relationship among the defendant, the forum, and the litigation—the essential foundation of specific jurisdiction," *id.* at 365. And when the defendant is a major corporation that does "substantial business in the State," including as to the specific product at issue ("like Ford" there, or Samsung here), *id.* at 355, the "exercise of jurisdiction is [] reasonable" and "treats [the defendant] fairly," *id.* at 367–68.

The Supreme Court in *Ford* made clear that this rule is satisfied even if the specific product that injured the plaintiff had been originally sold by the defendant "outside the forum States, with [a third party] later selling [the product] to the States' resident[]." *Id.* at 366. Rejecting the defendant's argument to the contrary, the Court held that a plaintiff may establish jurisdiction under this rule "without a causal showing." *Id.* at 362. What matters under *Ford* is not whether the claims "arise out of" the defendant's forum-related contacts in a "strict[ly] causal" sense, but that they "relate to" those contacts in the relevant sense. *Id.*

The panel adhered to this holding. It read *Ford* "to adopt the following rule for relatedness: Where the defendant sold a non-insignificant volume of product in the forum State, an in-state plaintiff's suit involving the in-state use of and in-state injury from the same product will satisfy the relatedness condition of specific personal jurisdiction." Op. 7–8. And the panel held that this rule has been satisfied here: As Samsung does not deny, it has sold a non-insignificant quantity of 18650 batteries directly to Texas companies ("same product"), and Ethridge is a Texas resident who used an 18650 battery in Texas and was injured there ("in-state injury"). *Id.* at 10–12.

The panel also rightly refused to create a new exception to this rule based on *who* Samsung sells to *within* a State—specifically, the fact that it "sells 18650 batteries to Texas *companies* (like HP, Dell, and Black & Decker)" and "not Texas *consumers* (like Ethridge)." *Id*. at 12. As the panel explained, this "different market" proposal—which "would divide the forum State into many smaller markets" rather than "one, indivisible forum State"—cannot be "reconcile[d] … with *Ford*" and is "inconsistent with the Supreme Court's whole-forum focus" in personal-jurisdiction cases. Op. 13–14. It would also be "unworkable" in practice, making personal-jurisdiction doctrine "fuzzy to the point of indeterminacy." Op. 14–15. And it would create uncertainty as to the continued viability of many of this Court's personal-jurisdiction precedents, which consistently "turn on the number of products entering a forum *State*"—not some artificial economic subcomponent thereof. Op. 15 (emphasis added).

**B.** Samsung claims that the panel "misconstrues *Ford*[]" based on what it says are the "two most important words" in the Supreme Court's articulation of the rule: "like Ford." Pet. 12. Because Ford is a "global auto company," argues Samsung, its "forum contacts made it likely … that Ford would have to defend the plaintiffs' claims in the forum." *Id.* at 12–13. According to Samsung, the same isn't true here.

That is wrong in multiple ways. The Supreme Court included the words "like Ford" to ensure that its rule would cover "substantial" efforts to serve a State's market. *Ford*, 592 U.S. at 355. But it would not cover someone who engages in only "isolated or sporadic" transactions with the State, like a "retired guy in a small town in Maine [who] carves decoys and uses a site on the Internet to sell them." *Id.* at 366 n.4. The panel's "same product plus in-state injury" test accounts for that distinction. Op. 7–8. It applies only "[w]here the defendant sold a *non-insignificant* volume of product in the forum State." *Id.* (emphasis added). As Samsung does not deny, that is the case here. Just as Ford is a "global auto company" that "did substantial business" in the forum State, including as to the specific product at issue there, *Ford*, 592 U.S. at 355, Samsung is a global electronics company that has made substantial sales of 18650 batteries to Texas customers. Those direct sales, moreover, have made it foreseeable that Samsung could be haled into court in Texas to defend against claims concerning this product. Indeed, even on Samsung's view, a factory worker injured by an 18650 battery at a Black & Decker plant in Texas could sue in the State.

Samsung also asserts that the panel's test fails to respect the "real limits" on specific personal jurisdiction acknowledged by *Ford*. Pet. 2. This is plainly not so. To come within *Ford*'s rule, as interpreted by the panel, the plaintiff must be (1) a *resident* of the forum State who was (2) injured by the defendant's product in *that State*, and (3) the defendant must have served a market for the *same product* in that State, and (4) done so in a *non-insignificant* way. Op. 7–8. That does not come close to collapsing the line between general and specific jurisdiction. Because only a single State can even *theoretically* meet these requirements, the rule prevents the "forum-shopping" that animated the decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017), where the plaintiffs "were not residents of [the forum State]" and "had not sustained their injuries [there]." *Ford*, 592 U.S. at 369–70 (distinguishing *Bristol-Myers*). Here, Ethridge is a Texas resident who used a product in Texas and was injured by it in Texas. He thus "brought suit in the most natural State." *Id.*

In short, the panel got it right. It correctly interpreted *Ford*, correctly applied *Ford*, and correctly rejected Samsung's bid for an exception to *Ford*. Nor was it alone in doing so: Twenty other appellate judges have similarly concluded that personal jurisdiction exists on analogous facts, including the unanimous Texas and Mississippi Supreme Courts and a panel of the Sixth Circuit. *See Morgan*, 670 S.W.3d at 348–51; *Dilworth*, 355 So.3d at 204–11; *Sullivan*, 79 F.4th at 670–74. The panel in this case did not err by maintaining uniformity between the federal and state courts in this Circuit.

## II. The panel opinion is fully consistent with—and reinforced by— this Court's personal-jurisdiction precedents.

**A.** Nor does the panel opinion contradict any decision of this Court. Echoing Judge Jones's dissent, Samsung claims (at 16) that the opinion "conflicts with" two post-*Ford* cases: *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021), and *Pace v. Cirrus Design Corp.*, 93 F.4th 879 (5th Cir. 2024). But as the panel noted, those cases are "factually inapposite." Op. 19. Neither even arguably falls within *Ford*'s rule.

*Johnson* was not a products-liability case at all. It was a libel case against an online newspaper that also happened to sell T-shirts and ads. Even if the in-forum sales of its T-shirts and ads were substantial, the plaintiff was "complain[ing] about a written article, not articles of clothing." 21 F.4th at 320. So he could not satisfy the "same product" part of *Ford*'s test. He also "failed to establish that injury occurred in Texas," so "the 'in-state injury' part of *Ford*'s test was lacking" as well. Op. 19.

Nor does the panel opinion somehow violate "the core principle[] of fairness" outlined in *Johnson*: that the "defendant must have some chance to limit or avoid []its exposure to the courts of a particular state." Pet. 16 (quoting *Johnson*, 21 F.4th at 320). Of course it must. But, as Judge Oldham explained, the panel opinion gives defendants that chance: Samsung may be sued in Texas for injuries caused by its 18650 batteries only because it "purposefully availed itself of the privilege of doing business in Texas through its multi-year" contracts selling those batteries to Texas companies. Op. 5, 19. It is *that* decision that forms the basis for specific jurisdiction.

*Johnson*, in fact, only confirms the correctness of the panel's reading of *Ford*. In explaining why *Ford* did not control, this Court in *Johnson* wrote that what "supported specific jurisdiction" in that case was the "link [] between the products that injured the plaintiffs and Ford's selling those products in the forum states." 21 F.4th at 324. That is precisely the "same product plus in-state injury" test described by the panel. And it is that very link that supports the exercise of specific jurisdiction here.

As for *Pace*, it too falls outside of *Ford*'s rule. In sharp contrast to this case, *Pace* involved an injury that occurred "completely outside the state"—a fact that Samsung omits. 93 F.4th at 901–02. It was this lack of an in-state injury that, to the *Pace* Court, made the case "more closely resemble[] that of *Bristol-Myers Squibb* than that of *Ford*." *Id.* at 902. "In *Ford*," this Court explained, "the plaintiff was injured in *the forum states*—a *key part* of the Court's relations-to-claims analysis." *Id.* at 901 (emphasis added). By *Pace*'s own logic, then, the panel's reading of *Ford* was correct.

**B.** If anything, it is Samsung's "different market" approach that is inconsistent with this Court's precedents. As the panel noted, this Court "repeatedly issues" personal-jurisdiction cases that "put everyone on notice that X sales into Mississippi constitutes purposeful availment of that forum, but Y sales does not." Op. 15 (citing cases). "If Samsung were correct," however, courts "would have to re-slice the forum sales along a potentially infinite number of different markets"—opening up a new line of attack for foreign defendants that would cast serious doubt over the continued

viability of this Court's longstanding precedents. *See, e.g.,* Op. 15 ("[I]f 203 forklift sales to the State of Mississippi was enough in *Ainsworth* [*v. Moffett Engineering, Ltd.*, 716 F.3d 174 (5th Cir. 2013)], how many would be enough if we narrowed the relevant market to just the Mississippi state government forklift market?").

## III. Far from asking this Court to "resolve" any circuit split, Samsung is really asking this Court to *create* a split between this Court and two state supreme courts within this Circuit.

Finally, Samsung argues (at 16) that rehearing en banc is necessary to "resolve [a] circuit split" with the Ninth Circuit in *Yamashita*. But this Court can do no such thing. The panel opinion expressly embraces "the Sixth Circuit's interpretation of *Ford* in *Sullivan*"—a case that is indistinguishable from this case and that Samsung ignores. Op. 18. So even if this Court were to grant rehearing and "affirm the district court's order" below, that would not eliminate any circuit split. *Contra* Pet. 16.

It would only give rise to an entirely new kind of split. Two years ago, in *Morgan*, the Texas Supreme Court unanimously held that personal jurisdiction is "inescapable" in a materially identical case involving the same type of battery. 670 S.W.3d at 349. The year before, the Mississippi Supreme Court unanimously held the same. *Dilworth*, 355 So.3d at 204. So if this case, which was originally filed in Texas state court, had not been removed to federal court, there is no doubt that jurisdiction would be proper. The panel opinion thus maintains uniformity between the state and federal courts within this Circuit. This Court should keep it that way.

**CONCLUSION**

Samsung's rehearing petition should be denied.

Respectfully submitted,

*/s/ Jonathan E. Taylor*
JONATHAN E. TAYLOR
GUPTA WESSLER LLP
2001 K Street NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*jon@guptawessler.com*

A. CRAIG EILAND
LAW OFFICES OF A. CRAIG EILAND,
P.C.
2200 Market Street, Suite 501
Galveston, TX 77550
(409) 763-3260

June 9, 2025

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Jonathan E. Taylor*
Jonathan E. Taylor

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 3,781 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

June 9, 2025

*/s/ Jonathan E. Taylor*
Jonathan E. Taylor